**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSE LUIS MORALES GODINEZ,

               Petitioner,

               v.

LEVI HELEM MORALES GODINEZ,

               Respondent.

Civil Action No. 22-03596 (GC) (DEA)

**MEMORANDUM & ORDER
ON MOTION FOR
STAY PENDING APPEAL**

**CASTNER, District Judge**

     **THIS MATTER** comes before the Court upon Respondent's June 29, 2023 Motion on Short Notice for a Stay, for Consideration of an Application for Pro Bono Counsel on Appeal, and to Delay Transmission of the Record to Circuit Court. (ECF No. 55.)

     On May 30, 2023, the Court issued a Memorandum Opinion finding that Petitioner had established a *prima facie* case of wrongful removal under the Hague Convention, and Respondent had not established any affirmative defenses or exceptions, and that the three minor children (J.A., S.D., and E.M.) had to be expeditiously returned from the United States to Mexico. (ECF No. 44.) To protect the interests of the children, the Court's accompanying Order directed the parties to coordinate in good faith regarding how the children will be returned and a mutually agreeable date for that return. (ECF No. 45.) The Court then held a telephonic conference on June 14, 2023, to finalize the logistics of returning the children to Mexico. (ECF No. 50.) That same day, June 14, the Court entered an Order that states that Respondent is required to return with the three children to Mexico by no later than July 7, 2023, and that she is required by June 30, 2023, to provide notice to the Court and Petitioner as to "the specific location, date, and time of Respondent's and the

children's arrival in Mexico." (ECF No. 49.) In accordance with the Hague Convention, the Court noted that "[t]he issue of permanent custody of the three children is to be determined by the appropriate court in Mexico." (*Id.*)

On June 29, 2023, almost a month after the Court's decision granting Petitioner's application and ordering the return of the three minor children to Mexico, Respondent filed a notice of appeal to the United States Court of Appeals for the Third Circuit (*see* ECF No. 54) and moved for a stay pending appeal (*see* ECF No. 55).

In the motion, Respondent does not cite any case law or identify any aspect of the Court's May 30, 2023 Memorandum Opinion that was in error. Instead, Respondent submits that enforcement of the Court's Orders "would create financial hardship for a *pro se* litigant to exercise her appellate rights after returning to Mexico and render her right to appeal . . . meaningless." (ECF No. 55-1 at 3.) Respondent also submits that there was no evidence "that the children remaining in their current living situation creates any harm or negative effect on their well-being" and that Petitioner "demonstrated his ability to travel to . . . New Jersey and visit with his children" when Petitioner came to New Jersey for the evidentiary hearing the Court conducted in late-February 2023. (*Id.*)

In addition, counsel for Respondent notes that he was appointed *pro bono* by this Court but writes that he informed Respondent several weeks ago that his firm would not be representing her on appeal. (*Id.* a 2.) Counsel asks this Court to appoint different *pro bono* counsel for appeal. (*Id.*) Counsel also asks this Court to "delay transmission of the record to the Court of Appeals" because "Respondent may choose to withdraw the notice of appeal."[1] (*Id.*)

---

[1] This Court does not control transmission of the record to the Court of Appeals once a notice of appeal has been filed; it occurs electronically.

Where, as here, the district court has found wrongful removal pursuant to the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001, *et seq.*, which implements the Hague Convention on the Civil Aspects of International Child Abduction, done at The Hague on Oct. 25, 1980, T. I. A. S. No. 11670, S. Treaty Doc. No. 99–11, and ordered the return of the wrongfully removed children to their country of habitual residence, the United States Supreme Court has instructed that "the four traditional stay factors [should be used] in considering whether to stay a return order: '(1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

In *Chafin*, the Supreme Court ruled that an appeal is not rendered moot simply because the return order has been effectuated, and the Court provided some guidance as to the balance that should be struck in evaluating a request for a stay pending appeal. *Id.* at 180 ("The Hague Convention mandates the prompt return of children to their countries of habitual residence. But such return does not render this case moot; there is a live dispute between the parties over where their child will be raised, and there is a possibility of effectual relief for the prevailing parent."). The Court wrote that the importance of prompt removal needs to be weighed against "the concern that shuttling children back and forth between parents and across international borders may be detrimental to those children." *Id.* at 178. Ultimately, courts were tasked with making an individualized assessment, and the Supreme Court cautioned that "routine stays . . . would conflict with the Convention's mandate of prompt return to a child's country of habitual residence." *Id.* at 178-79.

The United States Court of Appeals for the Third Circuit has echoed the Supreme Court's guidance and emphasized that because "multiple relocations of [a] child" may be "detrimental," courts "issuing a return order in a Hague Convention matter should seriously consider the possibility of staying that order pending appeal." *Didon v. Castillo*, 838 F.3d 313, 319 n.12 (3d Cir. 2016) (citing *Chafin*, 568 U.S. at 178). The Court of Appeals wrote that "[w]hile [it] do[es] not endorse '[r]outine stays' in such matters, a district court should carefully consider the traditional stay factors when 'considering whether to stay a return order.'" *Id.*

Here, after careful consideration of the factors and Respondent's basis for requesting a stay of return, the Court finds that a stay pending appeal is not warranted. Nevertheless, to allow Respondent an opportunity to seek a stay from the Court of Appeals on an emergency basis, the Court will temporarily stay its June 14, 2023 Order by extending from July 7, 2023, until July 14, 2023, the deadline for Respondent to return the three children to Mexico. If no stay is granted by the Third Circuit by then, Respondent will be required to effectuate the return of the three children to Mexico. In the meantime, counsel for Respondent is directed to forthwith file (by no later than July 5, 2023) an emergency application for a stay with the Court of Appeals and to include the request that different *pro bono* counsel be appointed on appeal.

As to the first stay factor, Respondent has not made a strong showing that she is likely to prevail on appeal, and her motion does not point to any issue of either fact or law as to which the Court erred. As part of this Court's careful consideration of Respondent's motion, the Court has independently reviewed its Memorandum Opinion as well as the record from the evidentiary hearing, and the Court has identified no error.

Following an evidentiary hearing on February 17, 2023, as well as pre- and post-trial briefing, the Court found that Petitioner met the four prongs for a *prima facie* case of wrongful

removal by a preponderance of the evidence, and Respondent failed to establish any exception by clear and convincing evidence. (*See* ECF No. 44.) In such a scenario, the Convention directs the prompt return of a child. *See Golan v. Saada*, 142 S. Ct. 1880, 1888 (2022) ("[T]he Convention generally requires the 'prompt return' of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country." (quoting Convention, art. 1(a))).

Respondent now argues that "no evidence was adduced . . . that the children remaining in their current living situation creates any harm," (ECF No. 55-1 at 3), but this is not a relevant factor. Once the Court determined that Petitioner timely brought his application (within one year of removal) and that Respondent wrongfully removed the children from Mexico, the question was not whether the children were in a safe situation in the United States but whether there was "clear and convincing evidence" that there is a "grave risk" that the children's "return [to Mexico] would expose the child[ren] to physical or psychological harm or otherwise place the child[ren] in an intolerable situation." *Golan*, 142 S. Ct. at 1892; Convention, art. 13(b); 22 U.S.C. § 9003(e)(2)(A). For the reasons provided in the Court's Memorandum Opinion, the Court concluded that "there [wa]s no evidence of any abuse, neglect, or violence directed towards any of the children" in Mexico, and the Court did not find that their return would place them "at grave risk of physical or psychological harm or otherwise in an intolerable situation if they were returned to Mexico." (ECF No. 44 at 15-18.) Although there was testimony at the hearing related to two instances of domestic abuse between Petitioner and Respondent, there was no testimony or evidence that the children had ever been abused or that they were aware or present for what occurred between Petitioner and Respondent. (*Id.*) Respondent did not allege that the children had been mistreated in any way in Mexico, and the testimony of third-party witnesses supported

the finding that the children had been well cared for. (*Id.*)

Further, the fact that Petitioner had the wherewithal to travel to the United States to be present for the evidentiary hearing in this case and that he might be able to afford to travel here to see the children is not a factor that weighs against return. If children have been wrongfully removed, a parent's financial ability to travel to them does not serve as a bar to return.

As to the second factor, Respondent argues that the return would "render her right to appeal . . . meaningless." (ECF No. 55-1 at 3.) This same argument was rejected, however, by the United States Supreme Court in *Chafin*, where the Court held that even when a child is returned, "there is a live dispute between the parties over where their child will be raised, and there is a possibility of effectual relief for the prevailing parent." 568 U.S. at 180. In so holding, the Court noted that "routine" stays because of an appeal "would undermine the goal of prompt return and the best interests of children who should in fact be returned." *Id.* at 179. Although there is always the potential harm of multiple relocations if the Court of Appeals later reverses, this alone cannot be enough to grant a stay. If it was, every appeal of a return order would lead to a stay, which the Supreme Court has cautioned against. *Id.* at 178-79.

As to the third factor, the Court notes that Petitioner has been separated from his three children for over a year and the children were taken from Mexico by Respondent in late-December 2021 without Petitioner's knowledge or consent. (*See* ECF No. 44 at 7, 10.) This continued separation without a meritorious defense to return constitutes an ongoing injury substantial in dimension. A stay would also deprive the children of "precious months when [they] could have been readjusting to life in [their] country of habitual residence, even though the appeal had little chance of success." *Chafin*, 568 U.S. at 178.

6

Finally, as to the fourth factor, the Court finds that the public interest in this case militates in favor of return because it was proven that the children were wrongfully removed from Mexico and there are no legitimate disputes of fact or law.  Indeed, the Hague Convention was adopted "in response to the problem of international child abductions during domestic disputes" and its "core premise" is that the interests of children relating to their custody are better served when custody decisions are made in their country of habitual residence.  *See Golan*, 142 S. Ct. at 1888 (citations omitted).  Extending the period of wrongful removal without any sound reason runs counter to the concerns that prompted the adoption of the Convention.

Thus, for the reasons set forth above, and other good cause shown,

**IT IS** on this 30th day of June, 2023, **ORDERED** as follows:

1. Respondent Levi Helem Morales Godinez's June 29, 2023 Motion for a Stay, Consideration of an Application for Pro Bono Counsel on Appeal, and to Delay Transmission of the Record to the Circuit Court is **DENIED**.

2. Nevertheless, in order to provide Respondent with an opportunity to seek an emergency stay from the United States Court of Appeals for the Third Circuit, the Court will temporarily stay its June 14, 2023 Order by granting Respondent an extension from July 7, 2023, until **July 14, 2023**, to return with the three children to Mexico.  Counsel for Respondent shall provide the Court and Petitioner with details of the children's return – including time, date, and location of arrival in Mexico – at least **two days** in advance of their arrival to Mexico and by no later than **July 12, 2023**.  Counsel for Respondent shall also file with this Court confirmation that Respondent and the three children have returned to Mexico **within twenty-four hours** of their departure from the United States.

3. Counsel for Respondent is directed to forthwith file (**by no later than July 5, 2023**) an application for an emergency stay pending appeal from the United States Court of Appeals for the Third Circuit and to renew the request that the Court of Appeals appoint different *pro bono* counsel for Respondent's appeal.

4. Respondent is prohibited from removing any of the three children from this Court's jurisdiction, except for returning the children to Mexico consistent with this Court's Order. The children may not be placed into the care or control of a third-party for their return without the Court's express permission.

5. The Clerk is directed to terminate the motion pending at ECF No. 55.

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE